...

Rebecca J. Hozubin, Esq.
Wilkerson, Hozubin & Burke
310 K Street, Suite 405
Phone: 907 276-5297
Fax: 907 276-5291
E-mail: Rebecca@wilkersonlaw.net
AK Bar # 9806016


Attorneys for Defendant GEICO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TERESA OOTEN MAULE,               )<br>                                   )<br>            Plaintiff,             )<br>                                   )<br>    vs.                            )<br>                                   )<br>GEICO GENERAL INSURANCE            )<br>COMPANY, d\b\a GEICO,              )<br>                                   )<br>            Defendant.             )<br>_____) | Case No. A03-0183 CV (JWS) |

**DEFENDANT'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES**

COMES NOW, defendant GEICO, through counsel, Wilkerson, Hozubin & Burke, and opposes plaintiff's Motion for Attorney Fees and moves for an order that defendant is the prevailing party.[1]

---

[1] Defendant is not seeking an award of fees, only a ruling that it is the prevailing party. The countermotion is being filed separately for consideration by the court.

**I.   Defendant Is The Prevailing Party**

The prevailing party is the one that succeeds on the main issue.[2] The Alaska Supreme Court recognizes exceptions to this rule. When recovery is *de "minimis"* or "incidental" plaintiff is not the prevailing party.[3]

> Prevailing party status does not automatically follow if the party receives an affirmative recovery but rather it is based upon which party prevails on the main issues. A party who successfully defeats a claim of great potential liability may be the prevailing party even if the other side is successful in receiving an affirmative recovery.[4]
>
> …
>
> Schwartz faced a potential liability of $275,000 but must pay only $1,937.09 less 40%. The jury awarded Hutchins nothing for his claims of future lost income and lost enjoyment of life. Additionally, Hutchins did not prevail entirely on the issue of liability since he was found to be 40% comparatively negligent. In light of the foregoing facts, we conclude that the trial court did not abuse its discretion by finding that Schwartz was the prevailing party.[5]

In this case plaintiff asked the jury for approximately $1,300,000. Plaintiff was awarded only $27,500. $1,000,000 of that request was for punitive damages; the jury awarded none.

---

[2] Plaintiff alleges that the main issues were the bodily injury claim and the bad faith claim. However, a brief review of the Third Amended Complaint reveals that the arbitration issue was the main issue in this case. Plaintiff tried to prevent a trial by any means possible. Plaintiff vehemently argued that defendant was not entitled to a jury. Plaintiff asked the court to force arbitration, and sought an injunction to require defendant to rewrite every policy issued in the State of Alaska. Clearly the arbitration issue was the main issue in this case, and plaintiff lost on that issue.
[3] Hutchins v. Schwartz, 724 P.2d 1194, 1204 (Alaska 1986), and Jones & Sons Inc. v. CR Lewis Co., 497 P.2d 312 (Alaska 1972).
[4] Hutchins, 724 P.2d at 1204 (citation omitted).
[5] Id.

$60,000 - $70,000 of that request was for past general damages; the jury awarded $20,000.  $50,000 of that request was for future special damages, including medical care and impairment of ability to earn income; the jury awarded none.  $50,000 of that request was for future general damages; the jury awarded none.  $100,000 of that request was for breach of the covenant of good faith and fair dealing; the jury awarded $7,500.  In short, plaintiff recovered only 2% of what she asked the jury to award.  Not only is plaintiff not entitled to full reasonable actual attorney fees, plaintiff is not the prevailing party.[6]

Defendant respectfully requests the court rule that defendant is the prevailing party, award plaintiff no attorney fees, and offset the fees previously awarded to defendant from the judgment.[7]

## II.  **Plaintiff Is Not Entitled To Full Reasonable Fees**

In the event that court rules plaintiff is the prevailing party defendant opposes her motion for full reasonable actual attorney fees.

The first basis for this opposition is plaintiff's contingency fee agreement.  Plaintiff is only obligated to pay a portion of her judgment to her counsel, not hourly attorney

---

[6] Id.
[7] See Section V.

fees.[8]  Plaintiff incurred no reasonable actual fees based on an hourly basis.  The hours presented have no bearing on the amount of money plaintiff is being charged.  Further, the rate of $190 per hour is fictitious.  The court should not make an award of fees on this falsehood.

Second, plaintiff specifically avoids mentioning the limitations imposed by Ak.R.Civ.P. 82(b)(1) which states: "The court shall adhere to the following schedule in fixing the award of attorney's fees to a party recovering a money judgment in a case." (Emphasis added.)  The language "shall" is mandatory, not discretionary.  Plaintiff recovered a judgment in the amount of $27,500.[9]  Therefore, plaintiff is entitled to no more than 20% on the first $25,000 and 10% on the remaining $2,500, if any.  Pursuant to the very rule under which plaintiff requests fees, she is not entitled to the exorbitant amount of almost twice the judgment.  If the court is to award any fees, which defendant will later argue is inappropriate even if plaintiff is the prevailing party, it should be based on the Rule 82(b)(1) schedule.

Plaintiff incorrectly argues that Arctic Slope Native Ass'n. v. Paul, 609 P.2d 32, 38 (Alaska 1980) allows the court

---

[8] *See* Affidavit of Jeff Barber.
[9] Defendant filed a motion for an additional offset based on the Medicaid lien it paid on plaintiff's behalf and disputes that this amount is the appropriate judgment amount.

4

to ignore the mandatory (b)(1) language.[10]  A brief review of Paul disposes of this argument.  In that case the court granted Paul fees in excess of the presumptive schedule under Rule 82 (b)(1).  The court based this award on former subsection Rule 82 (a)(2) of the rule which then stated:

> (I)n actions where the money judgment is not an accurate criteria (sic) for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with he amount and value of legal services rendered.[11]

Since that time, Rule 82(b)(2) was deleted from the rule and replaced with Rule 82(b)(3) and its subsections.[12]  Therefore, plaintiff's reliance on Paul is inappropriate.  Further, because plaintiff was awarded a monetary judgment she is entitled to fees, if any, only under Rule 82(b)(1) and not Rule 82(b)(2).[13]  Plaintiff's claim for a fictitious hourly rate should be rejected by this Court.

---

[10] Paul is generally cited in cases where counsel does not charge fees or charges very little fees and how to deal with an award of attorney's fees in such a case. *See* Municipality of Anchorage v. Gallion, 944 P.2d 436, 447 (Alaska 1997) and Municipality of Anchorage v. Gentile, 922 P.2d 248, 263 (Alaska 1996).  That is not the case here.  Plaintiffs' counsel did charge for their services by way of a contingency fee contract.  The contract has not been produced and therefore it is unclear the percentage that was charged.  However, one can surmise the fees was a minimum of 33⅓%, and not a very small percentage.
[11] Paul, 609 P.2d at 38.
[12] *See* SCO 1118am.
[13] Rule 82(b)(2) allows for an award of a percentage of reasonable actual attorney's fees when "the prevailing party recovers no money judgment."  Clearly, this section is inapplicable to plaintiff.

5

### III. There Is No Basis For Enhanced Attorney's Fees

None of the variances under Ak.R.Civ.P. 82(b)(3) are applicable to plaintiff's award of attorney's fees. The variances actually demonstrate that any award of attorney's fees to plaintiff should be reduced, if not done away with all together, if plaintiff is the prevailing party.

**"(A) the complexity of the litigation;"[14]**

First, there is nothing particularly complex about a bodily injury damages case and therefore there is no basis to enhance the fees.[15]

Second, if this case is deemed complex it is because of the claims asserted by plaintiff. As the court may recall a number of the claims asserted by plaintiff were rejected before the case ever came to trial. For instance, plaintiff vehemently argued that defendant should be forced to arbitrate, defendant was not entitled to a jury trial, and defendant should be required to rewrite every policy ever issued in Alaska. Plaintiff lost each and every one of these arguments.

Further, after defendant successfully removed this action, plaintiff moved to amend her complaint to attempt to name an

---

[14] Plaintiff contradicts herself. On the one hand, she claims this was an overly complex litigation, and then she claims that she expended "minimum." hours on the case and should therefore be rewarded for the same. If this was such a complex litigation why did her attorneys spend "minimum" time on it?
[15] *See* Reid v. Williams, 964 P.2d 453 (Alaska 1998)(finding a medical malpractice case did not justify enhanced fees for complexity).

6

individual adjuster to try and defeat diversity after the fact. The court declined to allow her to do the same.  Finally, when defendant sought to bifurcate this matter in an attempt to bring an understandable order to the proceedings, plaintiff opposed the same, thus causing the trial in itself to be more complex than necessary.

The complexity, if any, was plaintiff's doing.  Plaintiff should not be rewarded for bringing a convoluted claim.  Any award of fees to plaintiff should be reduced or denied based on this factor.

**"(C) the reasonableness of the attorney's hourly rates and the number of hours expended;"**

Plaintiff is not being charged an hourly rate by her attorneys.  Plaintiff's counsel buries this fact in his affidavit.  Plaintiff and her counsel entered into a contingency fee agreement.  Therefore, there is no "hourly rate" being charged.  Thus, review of counsels' alleged "rates" is both irrelevant and inappropriate as they were never charged.  Clearly, this category is intended for non-contingency fee cases.

As to the number of hour expended, plaintiff's counsel claims they spent "minimum" hours on the case.  This actually justifies not enhancing the Rule 82(b)(1) fees because so few hours went into the preparation of this case.

**"(D) the reasonableness of the number of attorney's used;"**

Plaintiff does not specify how this subsection is applicable to her argument for enhancement. This is likely because there is no basis for this. Both parties relied on multiple attorneys in this litigation, primarily two. Thus, if this is a basis for enhanced fees for plaintiff, it is also a basis for decreased fees at the same time.

**"(E) the attorney's efforts to minimize fees;"**

Once again plaintiff does not elaborate any specific basis for enhanced fees in this category. And once again it should be noted that any work load had <u>zero</u> effect on the fees paid by plaintiff because of the contingency agreement. Therefore, because the amount of work did not cause an increase in fees, plaintiff is not entitled to an enhancement on this basis.

A review of the docket demonstrates no effort by plaintiff to minimize fees on the substantive motion practice end of this case. Plaintiff filed two motions to amend her complaint, two motions to remand, a motion to deem requests for admission admitted, three motions for summary judgment (all on the topic of arbitration, and the third after the court already ruled the arbitration clause was conscionable and within the reasonable expectations of the parties) and three motions *in limine* (one of which could have been avoided if plaintiff's counsel spoke with defense counsel as it was unopposed.) There was no effort

to minimize time spent on this case, and thus fees for at least defendant.[16] The work caused by plaintiff and the increase in fees to defendant necessitates a reduction to any fees awarded to plaintiff.

> **"(F) the reasonableness of the claims and defenses pursued by each side;"**

A review of any of her complaints puts the lack of reasonableness of plaintiff's claims in perspective:

> 12. That parties cannot contract to have a court, at public expense, set the value of the goods or services bartered (i.e. the value of 'bodily injury").
>
> …
>
> 19. That it is against public policy to clog the court at public expense to set the price on the sole item sold in an uninsured motorist contract like this, which is the value of the bodily injury, and while that can be done for a tort case (third-party), it cannot be done in a contract case (UM first-party).
>
> 20. The courts were not created to set the price of the item bargained for in a contractual agreement.
>
> 21. That the multibillion dollar insurance company does not get a building, a judge, twelve jurors, and all the support staff at public expense at no cost so they can delay folks to get more billions for themselves.
>
> …
>
> 27. That this contract as it stands is like Safeway contracting with their apple supplier stating: If both Safeway and Fancy Farm apples do not agree to

---

[16] Plaintiff was not being charged hourly fees by her attorneys because of the contingency fee agreement.

> arbitrate the cost of apples, then this lack of contractual mechanism (price) will be set in a court of competent jurisdiction who will set forth the price of apples that we are buying and selling between us. Such a clause in a contract is not allowed since the court system is not set up to adjust thousands of uninsured motorist claims for Geico (sic) all at great public expense.[17]

Plaintiff's claim that defendant should be precluded from its constitutional right to a jury trial was not reasonable and was rejected by the court. Plaintiff's request for an injunction to require defendant to amend all its policies was not reasonable and was rejected by the court. Plaintiff's claim that defendant should be forced into arbitration was not reasonable and was rejected by the court. Plaintiff's claim that GEICO's conduct was outrageous was not reasonable and rejected by the jury. Plaintiff's claim for future damages was not reasonable and was rejected by the jury. What this boils down to is that the majority of plaintiff's claims were not reasonable, and such merit a reduction in any fees awarded, not an enhancement.

Plaintiff further argues that because she requested mediation she should be awarded enhanced fees. This, however, fails to demonstrate the reasonableness of her own claims. Further, the Alaska Supreme Court already ruled that awarding

---

[17] Third Amended Complaint. These are but a few examples in the complaint.

10

enhanced fees based on prior settlement positions is reversible error.[18]

Additionally, there is no guarantee that a settlement conference would have resolved this matter. And if the case could have been resolved by settlement, why was plaintiff not willing to engage in informal settlement discussions? Plaintiff conveniently omits the fact that on several occasions undersigned counsel telephoned plaintiff's counsel asked if plaintiff was willing to settle, made settlement offers, and never received any counteroffers to the same.[19] This is emphasized in Exhibit 2, wherein undersigned's letter states: "If you care to make a settlement offer, we will review the offer." Plaintiff made no offer. Plaintiff had no interest in negotiating or resolving the case or she would have engaged in informal settlement negotiations. She chose not to. The request to mediate does not constitute reason to enhance her attorney fees.

Plaintiff also points to defendant's conduct alleging it "aggressively but unsuccessfully litigation many issue that were unreasonable, like issue involving drug use, bad conduct, seat-belt use." First, plaintiff raised the drug use issue in her own motion *in limine*. The court first ruled, "Without

---

[18] Alderman v. Iditarod Properties, Inc., 104 P.3d 136, 143 (Alaska 2004).
[19] Undersigned certifies the same and will submit an affidavit of necessary.

showing why her marijuana use is relevant to the issues in this case, or at least related to her apparent failure to take her prescriptions, GEICO may not impeach Maule's credibility on a collateral issue" leaving the door open for the court to revisit the issue.  Further, the ruling was limited to plaintiff's positive tests for marijuana and methadone <u>post-accident</u>, and did not address her <u>pre-accident</u> marijuana use.[20]  Defendant's motion was to address pre-accident use, and to revisit the prior order in light of the new evidence.  The additional motion practice actually benefited plaintiff in that it kept evidence of her pre-accident and post-accident illegal drug use out of the trial.

Second, there is no motion practice regarding general "bad conduct" as alleged by plaintiff.  Third, plaintiff filed the motion on the seatbelt issue, not defendant.

Next, plaintiff alleges that defendant "unfairly tried to restrict most of the relevant testimony from medical witnesses."  There was no attempt to restrict any of the physicians' testimony as to their treatment of plaintiff, diagnosis, prognosis or opinions as to the same.  As the court may recall, plaintiff attempted to present one of her treating physicians, Dr. Chisholm, in an expert capacity without prior notice and without expert disclosures.  The court precluded

---

[20] Which she raised *sua sponte* at trial despite the protective order.

plaintiff from doing so, as there was no basis in federal law for the same. Plaintiff then submitted Dr. Chisholm as an expert before the jury despite the ruling minutes prior. The court once again declined to allow plaintiff to circumvent expert rules. Such tactics by plaintiff do not support an enhancement in fees but instead support a decrease in any award of attorney fees to plaintiff.

**"(G) vexatious or bad faith conduct;"**[21]

Plaintiff's only argument for an enhancement based on vexatious and bad faith litigation tactics is that defendant's employee testified that she took Rule 68 into account in assessing whether to arbitrate or litigate the claim. This, however, is an inappropriate basis. "The bad faith conduct warranting an enhanced fee award under Rule 82(b)(3)(G) occurs *during the litigation,* not during the underlying transaction that is the subject of the litigation."[22] Ms. Smith's taking Rule 68 into account in her assessment of whether to arbitrate occurred in April 2002; one year and three months before suit was ever filed.[23] This is not a basis for enhanced fees.

---

[21] Plaintiff further guesses as to the cost of the defense of this matter. This is speculation and plaintiff has not basis for stating the same.
[22] Cole v. Bartels, 4 P.3d 956, 951 n.24 (Alaska 2000)(emphasis in original), *citing* Reid v. Williams, 964 P.2d 453, 463 (Alaska 1998) ("Rule 82 ... provides protection for the winning litigant who is forced to respond to an opponent's ... bad faith litigation tactics.").
[23] *See* testimony of S. Smith, and Plaintiff's Trial Exhibit 32.

> **"(H) the relationship between the amount of work performed and the significance of the matters at stake;"**

In one breath plaintiff claims that this case was such an important case because it involved bad faith claims, and she is therefore entitled to enhanced attorney's fees for the same. In the next breath she alleges that there was too much work performed for the "significance of the matters at stake." This is contradictory. What this category asks is was there too much work performed for such insignificant matters?

The claims were difficult to ascertain, for both the court and defendant, because of the confusing complaint. The court acknowledged this difficulty at trial. If there was too much work performed it was at the behest of plaintiff through her convoluted complaint and substantial motion practice. Once again there is no basis here for enhanced fees.

> **(I)  the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;**

It is unclear how this category would support a claim for enhanced fees for plaintiff. The language is clear. This category is reserved for when a fee award is too "onerous to the <u>non-prevailing party</u>." (Emphasis added.) Plaintiff is claiming that she is the prevailing party. Therefore this category has no bearing on her fees. This category pertains

only to the effect of the award on defendant, if found not to be prevailing party.[24]

If plaintiff is arguing that an award without enhancement would discourage plaintiffs like her from making use of the court system, her argument is contrary to Alaska law. In Reid v. Williams, 964 P.2d 453, 462 (Alaska 1998) the plaintiff argued

> that the nominal award of attorney's fees will deter access to the courts and discourage non-wealthy individuals from litigating good faith claims. He contends that individuals cannot seek judicial redress if the cost of litigating outweighs the damages awarded.

The court reasoned that "[e]ven though a party's litigation expenses are in part the result of the opponent's litigation tactics, to a large extent the party has the ultimate control over the way it assesses its case and litigates its position."[25] The court ruled that "[b]ecause Reid is the prevailing party, [82(b)(3)(I)] does not justify departing from the Rule 82(b)(1) schedule."[26] Yet again, there is no basis for enhancing any fees.

---

[24] If defendant is found to be prevailing party, this category, and all others are irrelevant for plaintiff, as defendant is not requesting any fees.
[25] Reid, 964 P.2d at 462-463.
[26] Id. at 463.

> **"(J) the extent the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and"**

As with many of the other factors plaintiff does not provide a specific basis for an enhanced award based on this category. The fees incurred by plaintiff herself were not overbearing, as she has contingency fee arrangement with counsel.[27] Further, it was counsels' choice to enter into the fee agreement arrangement as well. Such an arrangement will naturally lead to cases where counsel is paid an exorbitant amount for a little bit of work, and in some instances counsel will be paid less for more work. It is the nature of the contract.[28] Further, plaintiff and/or her counsel drove much of the work involved in this case by filing long and confusing pleadings and filing three separate summary judgment motions on the same issue. Defendant could not and did not drive up the cost of this litigation for plaintiff, as plaintiff is paying her attorney a percentage of her judgments, nothing more. Once again, this does not merit an increase in fees.

---

[27] Notably we do not know what percentage she is paying her attorney as the fee agreement has never been produced. The percentage however, makes no difference because if it is an onerous percentage to her, for example 50% or more, then that is an issue of the Bar Association, not this court.

[28] The question throughout Rule 82(b)(3) is what harm is there to plaintiff or defendant, the parties, not their counsel. In this case there is no harm to plaintiff because of the contingency fee agreement. Counsel should know litigation costs as well as risks associated with litigation. That is why the rules do not provide for enhancements for counsel, but instead only for parties.

**"(K) other equitable factors deemed relevant."**

As there are no specific "other factors" addressed by plaintiff, defendant will not speculate, and instead refer the court to all other arguments pertaining to all of the prior factors.

### IV. AS 45.50.537 Provides No Basis For Fees

Plaintiff next argues that because she believes defendant violated an Unfair Trade Practice she is entitled to full reasonable actual attorney's fees. First, plaintiff never made a claim under the Unfair Trade Practices Act.[29] Second, even had plaintiff made a claim it would have been an invalid claim. The Unfair Trade Practices and Consumer Protection Act is inapplicable to insurers:

> (a) Nothing in AS 45.50.471 -- 45.50.561 applies to
>
> …
>
> (3) an act or transaction regulated under AS 21.36 or AS 06.05 or a regulation adopted under the authority of those chapters.

AS 45.50.481. AS 21.36 regulates insurers. AS 45.50.537 provides no basis for plaintiff's unreasonable request for fees.

---

[29] *See* Third Amended Complaint dated January 21, 2004.

### V. Defendant Is Entitled To An Offset For Previously Awarded Attorney Fees

On August 4, 2005 the court ruled that "GEICO should not have to repeatedly defend against settled issues" and awarded full fees for having to do so.[30] Plaintiff never abided by the court's order and paid the fees. Based on the foregoing, defendant is entitled to a $1,072 offset on any fees awarded to plaintiff. If plaintiff is awarded no fees, defendant is entitled to an offset on the judgment for this prior award.

### VI. Conclusion

What is blatant in plaintiff's motion is that she is still making frivolous arguments, necessitating that defendant respond to the same. Defendant is the prevailing party, as plaintiff only had a "*de minimis*" recovery on a small number of her claims. Defendant respectfully asks that this court bring an end to this matter and declare it the prevailing party.

In the event the court rules plaintiff is the prevailing party the law is clear: plaintiff is not entitled to full fees based on AS 45.50.537 and plaintiff is only entitled to Rule 82(b)(1) attorney's fees on the amount of the judgment, if any, and not some admittedly fictitious hourly rate that was never charged to plaintiff. Plaintiff is asking the court to use the attorney fees mechanism as a punitive measure because the jury

---

[30] Docket 103.

disagreed with her, on the majority of her claims. There is no basis in law that supports such a request. Defendant asks the court declare it the prevailing party or in the alternative award no fees to plaintiff.

DATED this 3rd day of March 2006.

>Wilkerson, Hozubin & Burke
>
>By: s/Rebecca J. Hozubin
>    310 K Street, Suite 405
>    Phone: 907 276-5297
>    Fax: 907 276-5291
>    E-mail: Rebecca@wilkersonlaw.net
>    Attorneys for Defendant GEICO
>    AK Bar No. 9806016

CERTIFICATE OF SERVICE
I hereby certify that on the
3RD day of March 2006, a copy
of foregoing Defendant's Opposition to
Motion for Attorney's Fees
was served electronically
on the following:

Jeff Barber, Esq.
Law Offices of Steve M. Sims
821 N Street, Suite 103
Anchorage, AK  99501

WILKERSON, HOZUBIN & BURKE

By: s/Rebecca J. Hozubin

2000.232/plead/Opp to Mtn for Fees